UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| S.B., et al.,<br><br>    Plaintiffs,<br><br>          v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>    Defendants. | Civil Action No. 09-2099 (JEB) |

**MEMORANDUM OPINION**

Plaintiffs Robert Boorstin and S.B., his son, bring this action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, challenging a hearing officer's limitation of their reimbursement to only certain related services as part of S.B.'s Individualized Education Program. Plaintiffs contend that the hearing officer's failure to reimburse them for all related services operates as a denial of a free and appropriate education (FAPE) required by the IDEA. The parties have now filed cross motions for summary judgment.

**I.     Background**

    A.  The IDEA Statutory Framework

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in the IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982). As a condition of receiving funding under the IDEA, school districts are required to adopt procedures to ensure appropriate educational

1

placement of disabled students.  See 20 U.S.C. § 1413.  A student's eligibility for a FAPE under the IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" or "individualized education program team." § 1414.  Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE.  See § 1414(d)(1)(B).

School districts must also develop a comprehensive plan, known as an individualized education program (IEP), for meeting the special educational needs of each disabled student. See § 1414(d)(2)(A).  The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade."  Rowley, 458 U.S. at 204.  "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school."  Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and alterations omitted).  The IDEA requires IEPs to include, among other things:

> [1] A statement of the child's present levels of academic achievement and functional performance, including . . . how the child's disability affects the child's involvement and progress in the general education curriculum; [2] a statement of measurable annual goals, including academic and functional goals, designed to . . . meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum . . . [and] meet each of the child's other educational needs that result from the child's disability; [3] a description of how the child's progress toward meeting the[se] annual goals . . . will be measured; [and 4] a statement of the special education and related services and supplementary aids and services . . . to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child.

§ 1414(d)(1)(A)(i).

The IDEA requires that children with disabilities be placed in the "least restrictive environment" so that they can be educated in an integrated setting with children who are not disabled to the maximum extent appropriate. See § 1412(a)(5)(A). The IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. See §§ 1414(f), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, see §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." § 1415(h). A qualified impartial hearing officer conducts the due process hearing in accordance with the Act. 5 D.C. Mun. Regs. § 3030.1.

Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court. § 1415(i)(2); 5 D.C. Mun. Regs. § 3031.5. The district court has remedial authority under the Act and broad discretion to grant "such relief as the court determines is appropriate" under the IDEA as guided by the goals of the Act. § 1415(i)(2)(C)(iii).

B. S.B.'s Education

S.B. is a twelve-year-old child who has been diagnosed with Asperger Syndrome and Developmental Delay. Admin. Record at 4 (Hearing Officer's Aug. 9, 2009, Decision). He currently attends the McLean School, a private school in Potomac, Maryland. Id. at 3  In 2004, S.B. was determined to be eligible to receive special education and related services under the IDEA. Id. at 4. An IEP was created for S.B. that year while he was attending the Kingsbury School in Washington, D.C. Under his IEP, S.B. was prescribed the following services per

week: (1) 24 hours of specialized instruction; (2) 90 minutes of psychological counseling; (3) 2 hours and 15 minutes of speech therapy; and (4) 90 minutes of occupational therapy. Id.

The following year -- during the 2005-06 school year -- S.B. attended the Lowell School in Washington. Id. On February 16, 2006, Plaintiff Boorstin filed a due process complaint against DCPS seeking funding for S.B. at Lowell. Id. The due process complaint listed several related services for which he sought reimbursement, including occupational therapy, speech/language therapy, psychological counseling, and developmental optometry. Id. (These differed slightly from the services he received under his Kingsbury IEP.) Rather than proceed to a due process hearing, Boorstin and DCPS entered into a settlement on March 2, 2006. Under the terms of the agreement, DCPS agreed to "[p]lace and fund [S.B.] at the Lowell School for the 2005-06 school year, with all related services specified in the [February 16, 2006] Due Process Hearing Request." Id. at 101 (Settlement Agreement). DCPS then issued a "Prior Notice" on April 3, 2006, documenting S.B.'s change in schools from Kingsbury to Lowell. Id. at 4. At the end of the school year, DCPS reimbursed Plaintiff Boorstin for tuition at Lowell and the related services spelled out in the settlement agreement for that school year. Id.

S.B. continued to attend Lowell for the next two school years and to receive the agreed upon related services, except for developmental optometry services, which his parents decided were no longer necessary. Id. at 5-6. Plaintiff Boorstin also paid for S.B. to receive additional related services -- *e.g.*, neuropsychological assessment, psychopharmacology and counseling, cognitive evaluation, and tutoring -- even though these additional related services were not provided for in the settlement agreement. Id. at 6. During this period, DCPS never met or observed S.B. at Lowell, nor did the school system contact the school to check on S.B.'s progress. Id. at 5. S.B.'s IEP was not updated, and there were no new evaluations or testing for

him during this time either.  Id.  The school system, moreover, did not reimburse Plaintiff Boorstin for tuition or any of the related services, and he did not seek reimbursement until July 16, 2008.  Id.  At that time, he sent a letter to DCPS requesting reimbursement, but DCPS never responded.  Id.

Plaintiff Boorstin voluntarily moved S.B. to the McLean School for the 2008-09 school year.  Id. at 5.  He then filed a second due process complaint against DCPS on February 16, 2009, charging that DCPS had failed to monitor S.B.'s placement and violated his rights under the IDEA.  Id.  He sought reimbursement for S.B.'s tuition and "related services" at Lowell and McLean in connection with his complaint.  Id. at 14.

On April 29, 2009, a hearing officer convened a hearing and considered testimony and evidence from the parties.  Several weeks later, on May 21, 2009, the hearing officer issued his decision finding that Lowell continued to be S.B.'s placement and that DCPS was, therefore, required to reimburse Plaintiff Boorstin for tuition paid for the 2006-07 and 2007-08 school years.  Id. at 6.  Relying upon the parties' settlement agreement, the hearing officer found:

> The parent had every reason to believe that [Lowell] was the ongoing placement and that DCPS understood that to be the case. DCPS itself formally placed the student at [Lowell] in its Prior Notice.  Never having received notice that the DCPS designated placement was anything other than [Lowell], the parent was legally and logically entitled to rely upon the Prior Notice in his understanding that [Lowell] continued to be the student's IDEA placement.

Id. at 111.  Because Plaintiff had voluntarily moved S.B. to McLean for the 2008-2009 school year, however, he was not entitled to reimbursement for costs at that school.  Id. at 112.  The order did not include or address any of the related services.  Id. at 6.

Following that decision, Plaintiffs sought e-mail clarification as to whether the May 21 decision included reimbursement for the related services.  Id.  In that e-mail, however, Plaintiffs

5

appear to have limited their request to just those services included in the settlement agreement. Id. at 72. Plaintiffs' counsel wrote, "Even if we had not specifically referenced <u>his related services that were accepted and paid for by DCPS in 2005-2006</u>, he would have been entitled to their continued funding under 'stay put,' but we need not go there in view of our referencing their provision in our hearing request." Id. (emphasis added). The hearing officer informed the parties that the May 21 decision covered tuition, but did not further clarify his decision. Id. at 6. In response, Plaintiffs filed a third due process complaint -- the complaint that is the basis of this action -- on July 18, 2009, specifically seeking reimbursement for "related services." Id.

On July 30, 2009, the same hearing officer convened a new due process hearing to consider Plaintiffs' third complaint. On August 9, 2009, the hearing officer issued his decision finding that DCPS had failed to provide S.B. with a FAPE because it did not reimburse Plaintiffs for the related services the parties had agreed to in their March 2, 2006, settlement agreement. Id. at 7. The hearing officer, therefore, ordered DCPS to reimburse Plaintiffs for the following related services, all of which were included in the settlement agreement: occupational therapy, speech/language services, and psychological counseling services performed during the 2006-07 and 2007-08 school years. Id. at 8. As for the additional related services, the hearing officer held that "the psychological evaluations and the cognitive evaluations and tutoring were services that were [not] a part of the student's IEP at [Kingsbury] when the settlement agreement was reached and are not services for which the parent is entitled to be reimbursed." Id. at 6.

Plaintiffs now challenge that decision in this Court on the ground that the hearing officer erred in awarding him only partial reimbursement for the related services. The parties have both moved for summary judgment.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. Liberty Lobby, 477 U.S. at 248. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the non-moving party. Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987); Liberty Lobby, 477 U.S. at 251-52 (court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

Although styled Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision. The IDEA provides a framework for such review. More specifically, the IDEA permits "any party aggrieved by the findings and decision" rendered during administrative proceedings to "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). The reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(C). In a review of a Hearing Officer Decision (HOD), the burden of proof is always on the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least

7

explain its basis for doing so.'" Reid, 401 F.3d at 521 (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989)).

The Supreme Court has held that the IDEA's preponderance-of-the-evidence standard of review does not authorize unfettered *de novo* review. See Rowley, 458 U.S. at 206 ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Courts must give administrative proceedings "due weight," id., and "'[f]actual findings from the administrative proceedings are to be considered prima facie correct.'" Roark ex rel. Roark v. District of Columbia, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). The statute, however, also suggests "less deference than is conventional in administrative proceedings," Reid, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party. See § 1415(i)(2)(C)(ii). When no additional evidence is introduced in a civil suit seeking review of a HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record. District of Columbia v. Ramirez, 377 F. Supp. 2d 63, 67 (D.D.C. 2005). As no new evidence has been submitted here, the Court will treat the parties' cross motions for summary judgment as motions for judgment based on the administrative record.

### III. Analysis

There is no longer any dispute about whether DCPS was required to reimburse Plaintiffs for tuition and (at least some) related services during the 2006-07 and 2007-08 school years. That has been done. Instead, the only question in this case is whether the hearing officer erred in limiting Plaintiffs' recovery to only those related services named in the parties' settlement

8

agreement. In support of their Motion, Plaintiffs argue that: (1) procedurally, the hearing officer failed to provide sufficient findings of fact and conclusions of law to support his partial reimbursement determination; and (2) substantively, the hearing officer failed to recognize that S.B.'s needs changed over time and DCPS failed to address those changing needs. The Court cannot agree.

    A.  <u>Sufficiency of the Hearing Officer's Decision</u>

HODs are governed by <u>The Special Education Student Hearing Office Due Process Hearing Standard Operating Procedures</u>. Section 1003 states:

> The decision must include the identity of the parties, the final determination, and appeal rights. The Hearing Officer's Determination must also include findings of fact and conclusions of law; identify who prevailed on what issue; and specify what the school system, the parent(s), and the child are expected to do to carry out the decision.

HODs, moreover, must contain "reasoned and specific findings." <u>Reid</u>, 401 F.3d at 521 (citing <u>Kerkam</u>, 931 F.2d at 87). Plaintiffs argue that the HOD fails to meet the standard because the hearing officer did not sufficiently justify his decision for reimbursing some, but not all, of the related services. Plaintiffs specifically rely on the fact that the decision does not identify by name two of the related services: psychopharmacology and counseling.

After a careful review of the hearing officer's decision, the Court is satisfied that it comports with the applicable standard. The hearing officer sufficiently justified his decision to include certain related services when he wrote, "The Hearing Officer does not find that the psychological evaluations and the cognitive evaluation and tutoring were services that were a part of the student's IEP at School A when the settlement agreement was reached and are not services for which the parent is entitled to be reimbursed." Admin. Record at 6. Having themselves heavily relied upon the settlement agreement as the basis for reimbursement, <u>see</u>

infra Section III.B., Plaintiffs should not be surprised that the hearing officer adopted the same basis for his decision. In light of Plaintiffs' reliance, it is eminently reasonable for the hearing officer to have done so. The HOD, moreover, is not required to list each related service when they can be easily summarized. The language quoted above encompasses the two related services that Plaintiffs complain were left out: the phrase "psychological evaluation" is broad enough to include psychopharmacology and counseling.

The rest of the HOD likewise satisfies the standard. It contains 22 paragraphs of findings of fact and a separate, detailed section on the hearing officer's conclusions of law.[1] It identifies the prevailing party and specifies what each party is expected to do to carry out the order. The HOD, therefore, meets the applicable standards, and the Court may proceed to the merits of Plaintiffs' claim.

### B. Reimbursement of the Additional Services

Plaintiffs argue that the hearing officer erred because he failed to recognize that S.B.'s needs changed and that other services were required to meet those needs. Defendants' response is twofold: first, Plaintiffs are not entitled to reimbursement for services that were not included in the settlement agreement; and second, even absent such agreement, S.B. clearly received a FAPE during his time at Lowell.

#### 1. Settlement Agreement

As described more fully above in section I.B., the parties entered into a settlement agreement on March 2, 2006, that specified the agreed upon conditions of S.B.'s education. Under the terms of the settlement, DCPS agreed to "[p]lace and fund [S.B.] at the Lowell School for the 2005-06 school year, with all related services specified in the [February 16, 2006] Due

---

[1] The May 21, 2009, Decision contained only 16 paragraphs in the findings of fact and approximately the same number of conclusions of law, but Plaintiff did not challenge the sufficiency of that decision.

Process Hearing Request." Id. at 101 (Settlement Agreement). The 2006 Due Process Hearing Request specifically listed the following related services: occupational therapy, speech/language therapy, psychological counseling, and developmental optometry. Id. As a result of this settlement agreement, S.B. received specialized instruction with these related services at the private Lowell School.

Plaintiffs heavily relied on the settlement agreement in their two 2009 due process complaints challenging DCPS's failure to reimburse Plaintiffs for tuition and related services. Indeed, their submissions suggest that, at least initially, they were seeking reimbursement for only those related services listed in the settlement agreement. Plaintiffs' June 18, 2009, Due Process Complaint states:

> Per the March 2, 2006 hearing request [that was incorporated into the settlement agreement], DCPS was specifically required to pay for [the related] services [in the settlement agreement] for the 2005-06 school year. While DCPS did reimburse for these services for the 2005-06 school year, DCPS failed to reimburse the parents for the cost of the related services for the 2006-07 and 2007-08 school years. By failing to reimburse the parents for all related services, DCPS denied this student a [FAPE] under the IDEA.

Id. at 14.

In their pre-hearing memorandum, Plaintiffs summarized their argument for reimbursement of related services as follows:

> For all of the reasons stated in the [May 11, 2009] Hearing Officer's Decision, the parent is entitled to reimbursement of the related services. The Hearing Officer found that by issuing a prior notice, following the settlement agreement, the parent was legally entitled to assume that the DCPS placement and funding at Lowell would continue. He found that the parent was therefore entitled to the funding for the 2006-07 and 2007-08 school years. That original placement and funding <u>under the settlement agreement included the related services</u>. The school system reimbursed the parent for <u>those related services</u> for the 2005-06 school year. Pursuant to the Hearing Officer's own decision, it was therefore

11

> reasonable for the parent to expect to be reimbursed not only for tuition, but for the related services for the 2006-07 and 2007-08 school years. Furthermore, under the Hearing Officer's own reasoning, it is logical that [the] school system should now be ordered to reimburse the parent for the related services.

Admin. Record at 385 (Parent's Pre-Hearing Memorandum) (emphasis added).

Plaintiffs, moreover, clarified in their pre-hearing memorandum that they were requesting reimbursement for the same services contained in the settlement agreement:

> The related services provided by the parent were critical for [redacted] to make progress academically and socially. DCPS certainly recognized this when it agreed to fund [redacted] related services in the 2006 settlement agreement. Moreover, in [redacted] last DCPS IEP, in which DCPS was funding his placement at Kingsbury Day School, it recommended – and he received – these exact related services.

Id. at 386 (emphasis added).

At the hearing, Plaintiffs continued to rely upon the settlement agreement language, but here first clearly differentiated between related services in the settlement agreement and additional services that S.B. received during his time at Lowell. But in doing so, Plaintiffs' counsel conceded that the related services not included in the settlement agreement might not be eligible for reimbursement. Plaintiffs' counsel stated:

> If you go back to the settlement agreement, the language in 16 that we refer to in the settlement agreement; it is questionable, we note, as to whether [the psycho pharmacology is] covered, because what it says is necessary -- OT, speech language therapy, psychological counseling and development optometry; [it's] not any of those.

Transcript of Hearing at 31-32. Plaintiffs' counsel continued, "[T]he last one is cognitive evaluation tutoring. That is supportive tutoring, which is again . . . questionable as to whether that's covered as well because once again, going back one last time [to the settlement agreement related services] . . . tutoring is not a specific related service." Id. at 32.

As Plaintiffs based the crux of their reimbursement argument throughout the process on the settlement agreement, they are hard pressed now to claim that the hearing officer erred in relying on the same document. Plaintiffs' reliance on the settlement agreement, furthermore, makes no sense unless Plaintiffs believed that such an education as provided for in the settlement agreement provided S.B. with a FAPE, at least during the 2006-07 and 2007-08 school years. As their argument is premised on this underlying assumption, it was entirely reasonable for the hearing officer to conclude the same: that S.B. was receiving a FAPE under the terms of the settlement agreement.

Not only did Plaintiffs rely on the settlement agreement throughout the hearings, but the agreement reflects the educational choices that the key parties agreed were best for S.B. As the Supreme Court said in Rowley, "In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." 458 U.S. at 207. The parties here agreed to a specific plan, and Plaintiffs relied upon that specific plan in arguing for reimbursement. Plaintiffs cannot simply abandon that reliance before this Court. Cf. District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1088 (D.C. Cir. 1984) ("It is well settled that . . . legal theories not asserted at the [trial] level will not be heard on appeal."). In light of these facts, the hearing officer did not err in relying upon the settlement agreement in determining which related services Plaintiffs were entitled to receive reimbursement for. As such, there is no reason to overturn the HOD, even under a *de novo* standard of review.

*2. FAPE*

There is a second reason to uphold the HOD: the Court is independently satisfied that the conditions included in the settlement agreement provided S.B. with a FAPE during the 2006-07 and 2007-08 school years. It is true that DCPS failed to monitor S.B. while he was at Lowell, and perhaps monitoring would have led DCPS to agree to additional services. That breach of duty, however, does not necessarily entitle Plaintiffs to recovery for all extra related services. See Schoenbach v. District of Columbia, 309 F. Supp. 2d 71, 78 (D.D.C. 2004); ("[P]rocedural violations of IDEA do not, in themselves, inexorably lead a court to find a child was denied FAPE."). Under Plaintiffs' theory, they could seek reimbursement for anything they desired simply because DCPS did not monitor S.B. Such a position makes little sense.

In Rowley, the Supreme Court held that the FAPE requirement is satisfied "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." 458 U.S. at 203. The Supreme Court further held that the precursor to IDEA did not require states to maximize the potential of handicapped students, and that in light of finding that the deaf child at issue was receiving significant educational benefit and related services that were calculated to meet her educational needs, the [IDEA] did not require the school system to provide the additional service requested by the plaintiff in that case. Id. at 198, 203, 210. The Supreme Court thus held that the precursor to the IDEA required that a school system provide only the "basic floor opportunity." Id. at 201; but see Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 862 (6th Cir. 2004) (modifying the standard to require school systems to provide a "meaningful educational benefit"); T.R. ex rel. N.R. v. Kingwood Township Bd. of Educ., 205 F.3d 572, 577 (3d. Cir. 2000) (same).

Here S.B. received a great deal more than a "basic floor opportunity" under the terms of the settlement agreement. The settlement agreement, moreover, no doubt provided him with a "meaningful educational benefit." S.B. received individualized education at a prestigious private school. His education also included related services specially designed to meet his needs. Plaintiffs themselves characterized S.B.'s placement at Lowell as "beneficial" for S.B. Admin. Record at 35. While it is certainly understandable that S.B.'s parents want to provide him every possible educational opportunity, DCPS is not required to fund services that go beyond the "basic floor opportunity." Because the settlement agreement provided S.B. with a FAPE, DCPS's procedural violation does not entitle Plaintiffs to reimbursement for those additional related services not included in the settlement agreement.

## IV. Conclusion

Because the hearing officer did not err in limiting Plaintiffs' recovery to reimbursement for tuition and the related services in the settlement agreement, the Court hereby ORDERS that:

1. Plaintiffs' Motion for Summary Judgment is DENIED;
2. Defendants' Motion for Summary Judgment is GRANTED; and
3. The case is DISMISSED.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 6, 2011